[Civ. No. 19684. First Dist., Div. One. Apr. 12, 1962.]

IONN GRAY, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

Marvin C. Hix, Theodore W. Rosenak and Noel D. Martin for Plaintiff and Appellant.

Dion R. Holm, Thomas M. O'Connor, City Attorneys, and John J. Taheny, Jr., Deputy City Attorney, for Defendant and Respondent.

SULLIVAN, J.— Plaintiff appeals on a settled statement from a judgment of nonsuit entered in an action for damages for personal injuries allegedly sustained by her in boarding one of the defendant city's streetcars. Viewing the evidence in the light most favorable to plaintiff, disregarding all conflicting evidence and indulging in every legitimate inference which may be drawn from the evidence, as we are required to do in accordance with the settled rules applicable in testing the propriety of nonsuits (*Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768]; *Estate of Arnold* (1905) 147 Cal. 583, 586 [82 P. 252]; *Blumberg* v. *M. & T. Incorporated*

(1949) 34 Cal.2d 226, 229 [209 P.2d 1]), we nevertheless conclude that the trial court properly granted defendant's motion for nonsuit.

According to the settled statement, the plaintiff Mrs. Gray testified that on the morning of October 8, 1956, at about 5:30 a. m., she was waiting at Geary and Divisadero Streets in San Francisco for a streetcar going in an easterly direction. It was dark. The weather was slightly foggy and damp. The street lights were on.

A streetcar came to the loading zone and after it stopped, the plaintiff started to board it. She stepped up on the first of the steps and then onto the second one and also took hold of the upright bar on the post in the middle of the entrance to the loading platform. She then stepped on the edge of the loading platform, along the entire edge of which there was a strip of metal about four inches wide. As she stepped on the edge of the platform, she stepped on the above metal strip and her foot on the metal strip slipped from under her. "[S]he fell and after falling she noticed that there was some moisture on that strip of metal. She was unable to complete getting on the street car and fell back into the street. . . ." The conductor assisted her to the curb.

Immediately following her fall, she looked at the bottom of her shoes but did not notice anything on her shoe. She could not say definitely whether or not there was moisture on the bottom of her left shoe. She testified that the steps of the streetcar looked damp to her and she noticed dampness on the street, although she could not say whether the dampness was quite heavy or slight.

She was taken to the emergency hospital in an ambulance. After receiving treatment, she went home in a taxi.

Priscilla Joseph, who was waiting to board the same streetcar, testified that the plaintiff stepped on the steps of the car and then on the metal strip which was along the outer edge of the loading platform; that when the plaintiff stepped on the metal strip she slipped and fell. She testified that "the metal strip looked OK to her."

Mrs. Gray and Priscilla Joseph were the only witnesses testifying on the issue of liability. No adverse party testimony was introduced pursuant to the provisions of section 2055 of the Code of Civil Procedure.

The defendant City and County of San Francisco there-

upon[1] made a motion for a nonsuit on the ground "that there was no evidence in support of plaintiff's case or any evidence of negligence or lack of proper care on the part of said defendant as a common carrier, and that the rule of res ipsa loquitur has no application to the facts of this case." The motion was granted. Plaintiff's subsequent motion for a new trial was denied.

Plaintiff makes several contentions on appeal which are reducible to the following: (1) That it was for the jury to determine whether the doctrine of res ipsa loquitur was applicable; and (2) that, independent of such doctrine, there was sufficient evidence to make out a prima facie case of negligence for the jury. We consider them in the above order.

At the outset it is clear, from the conduct of the plaintiff manifesting an intention to board the streetcar at the loading zone and the conduct of the motorman in stopping the car to receive her, that the relationship of passenger and carrier had been established. (*Lagomarsino* v. *Market Street Ry. Co.* (1945) 69 Cal.App.2d 388, 395 [158 P.2d 982].)

The defendant, therefore, was required by law to use the utmost care and diligence for the safe carriage of the plaintiff, to provide everything necessary for that purpose, and to exercise to that end a reasonable degree of skill (Civ. Code, § 2100; *McBride* v. *Atchison, Topeka & S. F. Ry. Co.* (1955) 44 Cal.2d 113, 116 [279 P.2d 966]; *Rogers* v. *Los Angeles Transit Lines* (1955) 45 Cal.2d 414, 417 [289 P.2d 226]) but was not an insurer of her safety. (*Troutman* v. *Los Angeles Transit Lines, Inc.* (1947) 82 Cal.App.2d 183, 185 [185 P.2d 616].)

While it is well settled that an inference of negligence arises under the doctrine of res ipsa loquitur when a passenger on a common carrier is injured as the result of the *operation* of the streetcar or other vehicle involved (*Hardin* v. *San Jose City Lines, Inc.* (1953) 41 Cal.2d 432 [260 P.2d 63], see collection of cases at pages 436-437; *Dempsey* v. *Market Street Ry. Co.* (1947) 79 Cal.App.2d 216, 218 [179 P.2d 34]), the mere fact that the passenger is injured while on the carrier does not justify such inference, despite the high standard of care imposed on the carrier by law. (*Prunty* v. *Allred* (1946) 73 Cal.App.2d 67, 71-72 [165 P.2d 935].)

[1]Counsel for the respective parties stipulated that the plaintiff could call her medical witness at a later time, in the event defendant's motion for nonsuit was denied.

The basic conditions requisite for the application of the doctrine of res ipsa loquitur must first be present.

In the case before us, the trial court, by granting the motion for nonsuit, held in effect that as a matter of law, the doctrine was inapplicable. Stated another way, it apparently concluded, as a matter of law, that one or more of the conditions requisite for res ipsa loquitur was not present in the case. We must first decide whether such determination can be justified on any ground.

The conditions, of which we speak and on which the applicability of the doctrine depends, are, according to the classic statement, three in number : (1) The accident or injury must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality in the control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. (*Barrera* v. *De La Torre* (1957) 48 Cal.2d 166, 169 [308 P.2d 724] ; *Seneris* v. *Haas* (1955) 45 Cal.2d 811, 823 [291 P.2d 915, 53 A.L.R.2d 124] ; *Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]. See generally *Zentz* v. *Coca Cola Bottling Co.* (1952) 39 Cal.2d 436, 440-446 [247 P.2d 344].)

Where the evidence is conflicting or subject to conflicting inferences, it is for the jury, under proper instructions, to determine whether each of the above conditions exists. (*Baker* v. *B. F. Goodrich Co.* (1953) 115 Cal.App.2d 221, 229 [252 P.2d 24].) However, where reasonable minds cannot differ, the determination as to whether the doctrine applies, may be a pure question of law.

With this latter thought in mind, we turn to consider the first requirement of the doctrine—that the injury or accident must be of a kind which ordinarily does not occur in the absence of negligence. We find the authorities in agreement that this requirement establishes a basis of past experience for the operation of the doctrine. It is stated for example in *Zentz* v. *Coca Cola Bottling Co., supra,* where the court reviewed a large number of California decisions on the point, that : "All of the cases hold, in effect, that it must appear, either as a matter of common experience or from evidence in the case, that the accident is of a type which probably would not happen unless someone was negligent. In the absence of such a probability there would be no basis for an inference of negligence which would serve to take the place of evidence of some specific negligent act or omission." (39 Cal.2d at

pp. 442-443.) Dean Prosser, in an exhaustive article on the subject, not only gives definition to the above requirement but also foreshadows (as we emphasize, *infra*) the answer to our problem at hand: "A res ipsa loquitur case is a circumstantial evidence case which permits the jury to infer negligence from the mere occurrence of the accident itself. Its first requirement is a basis of past experience which will permit the triers of fact to conclude that such events do not ordinarily happen unless someone has been negligent. *There is no room for that conclusion where the plaintiff has* merely tumbled down the stairs or *fallen in alighting from a stationary street car, since everyone knows that such accidents commonly occur without the fault of anyone unless it is the plaintiff himself.*" (Emphasis added.) (Prosser, *Res Ipsa Loquitur in California* (1949) 37 Cal. L. Rev. 183, 191-192.) Our inquiry, therefore, is properly directed to "the experience of the past." (*Judson* v. *Giant Powder Co.* (1895) 107 Cal. 549, 556 [40 P. 1020, 48 Am.St.Rep. 146, 29 L.R.A. 718].)

We must determine whether from the facts of the instant case, the conclusion may be drawn on the basis of experience "that negligence is the most likely explanation of the accident." (*Seneris* v. *Haas, supra,* 45 Cal.2d 811, 827.) "[T]he court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities [citation]. ▮▮▮▮ The inference of negligence is not required to be an exclusive or compelling one. It is enough that the court cannot say that reasonable men could not draw it. [Citation.]" (*Seneris* v. *Haas, supra,* p. 827.) On the other hand "where it is entirely clear that there is no basis of experience from which a reasonable man may conclude that negligence is a more probable explanation than any other" (Prosser, *Res Ipsa Loquitur in California,* 37 Cal.L.Rev. at p. 195), the doctrine cannot apply.

▮▮▮▮▮ Where a passenger falls down and is injured, while boarding or alighting from a carrier which is stationary, it cannot be said that negligence is a more probable explanation than any other. Common experience shows that people are likely to fall while boarding or alighting from streetcars, busses and other types of transportation without negligence on the part of anyone unless perhaps the passenger himself. Such accidents *do* ordinarily occur without the fault of others. Essentially they are similar to accidents involving falling or slipping on permanently immovable premises, as for example on the aisle of a store (cf. *Vaughn* v. *Montgomery*

*Ward & Co.* (1950) 95 Cal.App.2d 553, 556 [213 P.2d 417])
or on the common stairway of an office or apartment building
(cf. *Finch* v. *Willmott* (1930) 107 Cal.App. 662 [290 P. 660])
where it is clear that no inference of negligence arises merely
on proof of the fall. As Prosser states in the excerpt we have
quoted *supra,* "[t]here is no room for that conclusion [that
such events do not ordinarily happen unless someone has been
negligent] where the plaintiff has merely tumbled down the
stairs or fallen in alighting from a stationary street car. . . ."
(37 Cal.L.Rev. at p. 191.) Such accidents happen every day.
The probability of negligence is absent.

Where, on the other hand, res ipsa loquitur has been applied
against a carrier, the probability of negligence is present. In
such instances the facts have shown that the accident or injury
has arisen from the *movement* or *operation* of the carrier.
(See *Dempsey* v. *Market Street Ry. Co., supra,* 79 Cal.App.2d
216; *Prunty* v. *Allred, supra,* 73 Cal.App.2d 67.) Many
instances of its application involve the collision of the carrier
with some other vehicle or object. In the language of *Housel*
v. *Pacific Electric Ry. Co.* (1914) 167 Cal. 245 [139 P. 73,
Ann. Cas. 1915C 665, 51 L.R.A. N.S. 1105], the reason for
the application of the doctrine in such cases is "that in view
of the very high degree of care essential under the law on
the part of a carrier of persons toward those who are its
passengers, such a collision would not happen in the ordinary
course of events if the carrier exercised such care, and that
ordinarily when such an accident occurs, it is due to failure
on the part of the person operating the car to use the proper
degree of care in so operating it. . . ." (P. 249.)

But where there is merely proof of an accident or injury
occurring on the carrier, and nothing more, the probability
of negligence is not inherent in the facts. Thus it is stated in
*Wyatt* v. *Pacific Elec. Ry. Co.* (1909) 156 Cal. 170, 174-175
[103 P. 892] : "It is not the law, as the argument of the plain-
tiffs implies, that the mere fact that a passenger is injured
while aboard a car, or while alighting therefrom, creates a
presumption that the injury was caused by want of care on
the part of the defendant operating such car. It must first be
shown that the injury came from the movement of the car by
those in charge of it, or from something connected therewith,
or in control of the defendant. When this is done, the law
then presumes, *prima facie,* that the particular thing thus
shown to have caused the injury was due to the defendant's
negligence, and the burden is thrown upon the defendant to

disprove the *prima facie* case thus made. Such negligence is presumed because such accidents do not ordinarily happen if due care is used . . . here, the fact that the deceased was injured by falling to the ground, creates no presumption of negligence. But if it is also shown that the fall came about from the sudden start of the car as she was stepping off the same, then it will be presumed that the sudden start was caused by the defendant's negligence. But the proof of the injury, that is, the bruise or hurt, or the proof that she fell to the ground, without proof as to why she fell, raises no presumption either that she was made to fall by the sudden starting of a car at rest, or by a careless attempt to get off while it was in motion and before it had stopped."[2] The clear implication of the preceding language is that if the street-car was standing still, so that the accident or injury did not come about from its operation, there would be no justification to base the application of res ipsa loquitur on the mere fact that a person fell while getting off the car.

In *Stites* v. *Des Moines Transit Co.* (1957) 249 Iowa 185 [85 N.W.2d 905], plaintiff, a passenger on a bus, slipped and fell as she stepped on the first of two steps as she was getting off. These steps were covered with snow and slush or ice. The motorman had made no attempt to clean the steps for a distance of about 6 miles. Dismissal of the plaintiff's first count which relied on res ipsa loquitur was affirmed by the Supreme Court of Iowa on the ground that the doctrine was not applicable, the court stating: "Under the instant factual situation, we are unable to see wherein the res ipsa loquitur doctrine is applicable. From common experience it is known that one may, and often does, slip, trip or fall in descending from street cars and such frequently occurs in the ordinary course of things, irrespective of what the defendant did or did not do. Neither do we find in this record that exclusive control over the instrumentality which is a prerequisite to the doctrine's availability. True, as contended by plaintiff, the streetcar and all mechanical devices thereto attached were in the exclusive control of the defendant, but the record clearly shows that the fall was not due to the operation of the streetcar, limiting the word 'operation' to the mechanical factors thus involved. Plaintiff, in alighting from the street-

---

[2]The persuasiveness of this case is not lessened by the use of the word "presumption" (common with the older decisions) instead of "inference" or by the somewhat unfortunate language to the effect that "the burden is thrown on the defendant."

car was, to say the least, as much in control as was the defendant.'' (*Stites* v. *Des Moines Transit Co., supra,* 85 N.W. 2d at pp. 906-907.)

In *Capps* v. *American Airlines, Inc.* (1956) 81 Ariz. 232 [303 P.2d 717], the plaintiff, an airlines passenger, was injured when, in boarding a plane, his foot became wedged in something in the doorway of the plane and he was caused to fall. The Supreme Court of Arizona affirmed an instructed verdict in favor of the carrier, holding that res ipsa loquitur was inapplicable, and stating: ''It is our view that the 'fall' in itself is not sufficient evidence to invoke the *res ipsa loquitur* doctrine. There must be attendant circumstances to show that the 'fall' or accident is of the kind which ordinarily does not occur in the absence of the negligence of some one other than plaintiff. . . . People frequently fall without there being negligence of another to cause the fall. It may be due solely to their own negligence.'' (P. 719 [303 P.2d].)

The accident in the case before us is essentially of the same kind. It occurred while the carrier was at a standstill and did not arise out of any movement or operation of the defendant's streetcar. Reasonable minds, viewing the facts on the basis of experience, cannot draw a conclusion of negligence as a probable explanation. As a matter of law, then, the accident is not ''of a kind which ordinarily does not occur in the absence of someone's negligence'' (*Barrera* v. *De La Torre, supra,* 48 Cal.2d 166, 169) and the first condition requisite for res ipsa loquitur is not satisfied. Since the doctrine is therefore inapplicable, we need not discuss whether the other two conditions are fulfilled. We conclude that the trial court properly held the doctrine inapplicable.

We turn to plaintiff's second contention, namely that, independent of res ipsa loquitur, there was sufficient evidence to make out a prima facie case of negligence. Plaintiff claims no negligence in the operation of the street car. Her only claim appears to us to be that the defendant negligently allowed moisture to remain on the metal strip which bordered the loading platform.[3] Plaintiff argues that the evidence of such moisture was sufficient to take the case to the jury since

---

[3]In her complaint, plaintiff alleges that ''said street car was maintained and kept in a careless and negligent condition and manner by the defendants and as a result thereof . . . plaintiff slipped and fell. . . .'' However, it is also clear that plaintiff does not claim to have been injured as a result of a ''dangerous or defective condition of public property'' within the provisions of the Public Liability Act. (Gov. Code, § 53051.)

the defendant as a common carrier was required to use the utmost care and diligence for the safe carriage of its passengers. Plaintiff does not enlighten us as to exact condition of such moisture—whether dangerous or defective—, as to whether the condition was apparent, as to whether it was known or could have been known to the agents of the defendant, and all in all, does not explain just how mere proof of the moisture establishes a prima facie case of negligence. Defendant in reply, argues against a conclusion of negligence, that there is no evidence that the conductor of the street car knew or should have known of the condition. Thus the parties appear to stand in antithetical positions, the plaintiff claiming that liability attaches because of the prescribed highest degree of care, without taking into consideration the factor of notice, and the defendant claiming that liability does not attach because of lack of notice, without taking into consideration the prescribed highest degree of care. Unfortunately neither of the parties have referred us to any authorities establishing the criteria which they respectively apply.

Our clear starting point, however, is that the plaintiff's claim of negligence is based on an alleged dangerous and defective condition. Innumerable decisions announce settled rules of law determining liability for such a physical condition in connection with other types of legal relationships, as for example that existing between a landowner and an invitee. ▇▇▇ In the ordinary case, the plaintiff must show that the particular physical facts constituted a dangerous and defective condition and that the defendant had actual or constructive notice of it. (See for example, *Bridgman* v. *Safeway Stores, Inc.* (1960) 53 Cal.2d 443, 446-447 [348 P.2d 696]; *Crane* v. *Smith* (1943) 23 Cal.2d 288, 296 [144 P.2d 356]; *Hatfield* v. *Levy Brothers* (1941) 18 Cal.2d 798, 806 [117 P.2d 841]; *Louie* v. *Hagstrom's Food Stores* (1947) 81 Cal.App.2d 601, 607 [184 P.2d 708]; Rest., Torts, § 343.) ▇▇▇ Where the dangerous condition is not brought about by the negligence of the owner or his employees, the owner's negligence "is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it." (*Hatfield* v. *Levy Brothers, supra,* 18 Cal.App.2d at p. 806.) ▇▇▇ Such duty to exercise ordinary care may include a duty to inspect the premises, so that a dangerous condition

may be discovered. (*Blumberg* v. *M. & T. Incorporated, supra,* 34 Cal.2d 226, 229.)

Do these rules apply where the underlying legal relationship is that of passenger and carrier, and where the carrier is held to the highest degree of care? Our independent research has failed to disclose any California decision squarely holding that in order to recover against a common carrier for negligence predicated upon a dangerous or defective condition, actual or constructive notice on the part of the carrier must be established. In *McBride* v. *Atchison, Topeka & S. F. Ry. Co., supra,* 44 Cal.2d 113, a passenger using crutches while alighting from a train fell from the steps to the platform when apparently the end of one of his crutches slipped on a wet cigar butt. The evidence showed that the porter had failed to inspect and clean the car steps at the several previous stops made by the train, in accordance with his specific duty. Although presented with the argument that the carrier's knowledge of the condition was essential to recovery, the court felt that a determination of such question was not necessary to its decision.[4]

We are of the opinion that where the dangerous or defective condition is not created by the affirmative act of the carrier, or its agents, actual or constructive notice of such condition by the carrier must be shown in order to impose liability on it. To hold otherwise would be, in effect, to make the carrier an insurer of the safety of the passenger, contrary to the settled principles defining the degree of its legal responsibility and holding the carrier not to be an insurer. (Civ. Code, § 2100; *McBride* v. *Atchison, Topeka & S. F. Ry. Co., supra,* 44 Cal.2d 113; *Rogers* v. *Los Angeles Transit Lines, supra,* 45 Cal.2d 414; *Troutman* v. *Los Angeles Transit Lines, supra,* 82 Cal.App.2d 183.) In our view, the high degree of care required of a common carrier might impose a greater duty to inspect and thus make notice or knowledge more easily established, but the concept of the carrier's legal

---

[4]The court stated: "Defendants argue (citing 10 Am.Jur., Carriers, § 1394, p. 236) that in order to recover against a carrier for injuries sustained due to the presence of debris or other foreign substance upon the steps of a railway car, it is essential to show knowledge, express or implied, on the part of the carrier of the existence of such a condition. No California cases on the subject have been cited, nor have any been found; however, here we need not determine the abstract question because the evidence is sufficient to sustain a finding that the cigar butt would have been discovered by the defendants' porter if he had exercised the high degree of care imposed upon him." (*McBride* v. *Atchison, Topeka & S. F. Ry. Co., supra,* 44 Cal.2d at pp. 118-119.)

responsibility does not exclude the factor of notice or knowledge. The weight of authority supports the proposition that, in cases such as the instant one, actual or constructive notice is a prerequisite to the carrier's liability. (See, for example: *Branch* v. *Philadelphia Transp. Co.* (1953) 374 Pa. 60 [96 A.2d 860] (opinion by Musmanno, J.) ; *Garvin* v. *Butte Electric Ry. Co.* (1917) 54 Mont. 196 [169 P. 40] ; 10 Am.Jur., Carriers, §§ 1393, 1394, at pp. 235-236; see many cases collected and commented on in 117 A.L.R. 522; 34 A.L.R.2d 360, 362-363, 364-366, 366-367; and 74 A.L.R.2d 1336, 1339-1341.)

 Applying the foregoing rules, it appears that plaintiff testified that after falling she noticed "there was some moisture" on the metal strip of the loading platform. No evidence shows the nature of this moisture, that is, exactly what it was. Moisture can mean drops of water, condensed vapor, or a condition of dampness perceptible by some but not necessarily all of the human senses. There is no evidence that this moisture is anything different from the dampness and fog of the morning from which the plaintiff had just emerged. No evidence shows the extent of the moisture, whatever the moisture was. Neither by standards of measurement or by reference to other objects are we told the area over which it extended. Nor is there evidence that the moisture was on the metal strip before the plaintiff fell, much less that it was created or placed thereon by the affirmative act of the defendant's agents. In short, it does not appear what the moisture was, how much there was, or how long it had been there.

The above evidence does not show a dangerous or defective condition. Such a conclusion would, in our opinion, be the result of impermissible speculation rather than the rational process of inference. No matter how favorably the evidence is viewed, it leaves no room for any inference that the condition was dangerous or that it was such that the defendant's agents knew or should have known of its existence. There is not the slightest evidence in the record bearing on the length of time such condition existed prior to the accident so as to fix upon the carrier the responsibility of constructive notice.

We hold therefore that there was no evidence of negligence on the part of the defendant and that the motion for nonsuit was properly granted.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.