883 P.2d 691

**Encarnacion CARLOS and Melchor Carlos, Plaintiffs–Appellants,**

**v.**

**MTL, INC., a Hawai'i corporation, Daniel Nartatez, Defendants–Appellees,**

**and**

**John and Mary Does 1–10, and Doe Partnerships, Corporations or Other Entities, Defendants.**

**No. 15691.**

Intermediate Court of Appeals of Hawai'i.

Oct. 31, 1994.

Erlinda Dominguez (Thomas J. Kaster and Thomas E. Walsh, Law Offices of Erlinda Dominguez, with her on the briefs), Honolulu, for plaintiffs-appellants.

Randolph R. Slaton, on the brief, Honolulu, for defendants-appellees.

Before BURNS, C.J., and HEEN and WATANABE, JJ.

WATANABE, Judge.

Encarnacion Carlos (Encarnacion) and her husband, Melchor Carlos (Melchor), (collectively, Plaintiffs) appeal from a judgment absolving MTL, Inc. (MTL) and Daniel Nartatez (Daniel) (collectively, Defendants) of liability for injuries sustained by Encarnacion when she fell from a bus owned by MTL and driven by Daniel.

Challenging seven conclusions of law entered by the trial court, Plaintiffs argue that the trial court committed error in three respects: first, the trial court wrongly concluded that Defendants did not breach any duty owed to Encarnacion; second, the trial court improperly failed to apply the doctrine of res ipsa loquitur to presume Defendants' negligence; and third, the trial court incorrectly concluded that Encarnacion's contributory negligence barred any recovery by Plaintiffs.

We affirm.

## BACKGROUND

On April 11, 1988, Encarnacion was a passenger on an MTL bus headed for Kalihi and driven by Daniel, an MTL employee for seventeen years. Encarnacion planned to get off the bus at 'Umi Street, the last stop (terminus) on the Kalihi route, and then transfer to a Foster Village bus to return home. When the bus arrived at the 'Umi

Street terminus, Encarnacion was the last passenger on the bus to exit. The Foster Village bus was already at the terminus.

According to Encarnacion, she headed for the rear door of the bus, carrying a purse on one arm and a canvas bag containing three books on the other arm. When she had planted both of her feet on the higher of two steps descending out of the bus, the rear door of the bus suddenly closed and opened on her about four times, hitting her stomach and face, knocking her backwards, making her dizzy, and causing her to fall out of the bus and sustain injuries. Encarnacion admitted that she had not been holding on to any rail or any part of the bus for support while preparing to exit the bus.

At the June 13, 1991 trial, Encarnacion, who by then was seventy-one years old, testified that while the door was repeatedly closing and opening on her, she screamed to Daniel, "Oh, please, I'm yet here." She further testified that when she fell out of the bus she was knocked unconscious but forced herself to wake up. She then saw Daniel step out of the bus, look at her, and then get back into the bus as if to leave. Encarnacion threatened Daniel that she would call the police if he left and began looking for a pen to write down his bus number. It was only then that Daniel attempted to assist her.

The defense version of what happened on the day in question was totally different.

Daniel testified that after the bus had stopped at the 'Umi Street terminus, he locked the rear door of the bus because he thought all the passengers had departed. He then stood up to change the destination sign in the front of the bus and prepare for a trip in the opposite direction. It was only when he heard Encarnacion say, "Open the door," that he looked in the rear view mirror and realized that Encarnacion was still in the bus, standing on one of the steps of the rear exit. He did not observe the rear door closing and opening on Encarnacion at the time, and had seen no other passenger that day having trouble with the door. Daniel then unlocked the rear door, which was in a "pas-senger-control" mode, allowing Encarnacion to open it by pushing a touch bar. He then returned to the task of changing the destination sign.

Daniel testified that he did not see Encarnacion fall from the bus. However, he subsequently noticed that she was hurt because he saw her hobble to a bench at the bus stop, roll down her stockings, and examine her bleeding knee. At that point, Daniel got out of the bus, handed Encarnacion some tissues, and asked her what had happened. Encarnacion replied that she had fallen from the bus; she never mentioned, however, that the door of the bus had malfunctioned. Following standard MTL procedures, Daniel immediately called the MTL dispatch station to report the accident. Shortly thereafter, an MTL inspector, a police officer, and an ambulance arrived at the scene.

David Miyasato (Miyasato), who at the time of trial was Vice–President of MTL's Maintenance Department,[1] testified that shortly after the accident, he and members of his staff examined the rear door of the bus involved. They found the door to be operating properly and were unable to find any defects which would have caused the door to malfunction. According to Miyasato, the bus in question had "a bifold type rear door system where the door folds in half and slides to an open position." Transcript (Tr.) at 42. Furthermore, the door folds into the bus at the level of the bottom step, so that it would not be possible for someone on the higher step to be struck by the door. Miyasato also explained that the door is ordinarily "passenger-controlled," i.e., opened when a passenger grabs or touches a "touch bar." In an emergency situation when the door is not functioning properly, however, the driver can switch the door to an "operator-control" mode, in which case only the driver can open the door.

At the close of a jury-waived trial to determine liability only, the First Circuit Court concluded that Defendants were not liable to

---

**1.** David Miyasato testified at trial that at the time of the accident, he was the superintendent of MTL's Alapai Maintenance Division, and "was in charge of the daily operation of the Alapai Division, encompassing the whole maintenance area for MTL." Transcript at 41.

Plaintiffs and entered judgment in Defendants' favor. This appeal followed.

## DISCUSSION

### I.

#### *Breach of Duty*

█ It is undisputed that MTL is a common carrier and is thus required to exercise the "highest degree of care and prudence" for the safety of its passengers, as well as the "utmost human skill and foresight." *Fuller v. Honolulu Rapid Transit & Land Co.*, 16 Haw. 1, 9 (1904) (quoting *Coddington v. Brooklyn Ry. Co.*, 102 N.Y. 66, 5 N.E. 797 (1886)). Plaintiffs maintain that this standard of care was violated by Defendants in this case because Daniel had "a duty to see that all passengers had safely alighted before locking the door," and Daniel "obviously locked the rear door when [Encarnacion] was in a precarious situation at the rear door step." Amended Opening Brief at 13–14.

█ A common carrier does have a duty to discharge its passengers safely and to afford them sufficient time and opportunity in which to alight. 14 Am.Jur.2d *Carriers* § 888 (1964). "Furthermore, there is authority that the operator of a common carrier may not only be under an obligation to determine whether an alighting passenger is clear of the vehicle's door before it is closed, but also may be required to warn that he is going to close the door where the passenger may be expected to place his hand or some part of his body in a position where it might be injured by the closing door." 2A L. Frumer & M. Friedman, *Carriers, Common & Private* § 1.02[5] in *Personal Injury*, at Car–135—Car–137 (1994) (footnote omitted). However, a common carrier is not an insurer of the safety of its passengers, and it has no duty to avoid all dangers which could not reasonably be foreseen. *Fuller*, 16 Haw. at 9–10.

█ In this case, the Plaintiffs' and Defendants' versions of what transpired on the day in question differed considerably. The trial below thus boiled down to a credibility contest between Encarnacion, the Plaintiffs' only witness, and Defendants' witnesses. If the trial court had believed that Encarnacion was injured in the manner she described, then clearly it could have found that Defendants had breached their duty to her as a passenger. However, the trial court chose to believe the defense version of the case and accordingly concluded that no duty to Encarnacion had been breached by Defendants.

█ In cases of conflicting evidence, the credibility of the witnesses and the weight to be given to their testimony are within the province of the trial court and will not generally be disturbed on appeal. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 117–18, 839 P.2d 10, 28 (1992). Accordingly, we will not disturb the trial court's conclusion that Defendants did not breach any duty owed to Encarnacion.

### II.

#### *Res Ipsa Loquitur*

The trial court concluded that Plaintiffs bore the burden of proving their case by a preponderance of the evidence. Conclusion of Law (COL) No. 2. Plaintiffs contend that this conclusion was wrong because the doctrine of res ipsa loquitur was applicable in this case to infer Defendants' negligence and to shift the burden to Defendants to prove that they were not negligent. Based on the facts in this case, we disagree. Moreover, even if the doctrine were applicable, its effect would merely be to raise an inference, and not a presumption of Defendants' negligence, and there is ample evidence in the record to support the trial court's conclusion that Defendants were not negligent.

### A.

#### *Applicability of the Res Ipsa Loquitur Doctrine*

█ "It is often said that negligence must be proved, and never will be presumed. The mere fact that an accident or injury has occurred, with nothing more, is not evidence of negligence on the part of anyone." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 39 at 242 (5th ed. 1984) (footnotes omitted).

To prevail in a negligence action, therefore, a plaintiff must adduce sufficient evidence from which reasonable persons might conclude, upon the whole, that it is more likely than not that the plaintiff's injury or accident was caused by the defendant's negligence. *Id.* Such evidence may be direct or circumstantial. *Id.* One type of circumstantial evidence that plaintiffs often rely on to infer a defendant's negligence is commonly referred to as "res ipsa loquitur," a Latin phrase meaning "the thing speaks for itself." [2]

At its historical inception, the doctrine of res ipsa loquitur was merely a rule of evidence, permitting the jury to reasonably conclude, based on the circumstances of an unusual event, that the event was probably the defendant's fault. *Restatement (Second) of Torts* § 328D, comment a (1965). Shortly after its origin, however, the doctrine was applied to cases involving injuries to passengers at the hands of common carriers, and it became confused with an older rule which placed the burden on a carrier to show that its negligence had not caused the injury. *Id.* This confusion has caused a great deal of disagreement among various courts as to the application of the doctrine and its procedural effect. *Id.*

Hawai'i is in line with the majority of American jurisdictions which treat the doctrine as purely a procedural or evidentiary rule, rather than a substantive rule. According to the Hawai'i Supreme Court:

[T]he doctrine of res ipsa loquitur provides that "whenever a thing that produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of the injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care." ... Under the res ipsa loquitur theory, then, "[t]he

fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer or that it is necessary to offer" "without further proof ... of the defendant's duty and of his negligence to perform it."

*Turner v. Willis,* 59 Haw. 319, 324–25, 582 P.2d 710, 714 (1978) (quoting *Ciacci v. Woolley,* 33 Haw. 247, 257, 258 (1934)).

A res ipsa loquitur negligence case thus differs from a specific negligence case. As the Oklahoma Supreme Court has pointed out:

"The principal difference between a res ipsa loquitur case and a specific negligence case would seem to be that the very basis of liability, the existence of some negligence, may be shown by a particular kind of circumstantial evidence, namely, an unusual occurrence of a character which ordinarily results only from negligence (both in pleading and proof), and from which, therefore, negligence is a reasonable inference; while in a specific negligence case the careless acts or omissions which constitute negligence must be stated and proven. In other words, *in a res ipsa* case the ultimate fact, *some kind of negligence is inferred* without any evidential facts except the unusual occurrence itself; while in a specific negligence case there must be evidential facts sufficient to show some negligent acts or omissions which were the proximate cause of the occurrence."

*Flick v. Crouch,* 555 P.2d 1274, 1277 (Okla. 1976) (quoting *Harke v. Haase,* 335 Mo. 1104, 75 S.W.2d 1001 (1934)) (emphases in original).

In order to invoke the doctrine of res ipsa loquitur in a particular case, this court has held that a plaintiff must first establish the presence of three conditions or elements:

1. The event must be one which ordinarily does not occur in the absence of someone's negligence.

---

**2.** The use of the phrase apparently stems from the casual words used by Baron Pollock in an argument with counsel in the 1863 case of *Byrne v. Boadle,* 2 H. & C. 722, 159 Eng.Rep. 299

(1863), in which a barrel of flour rolled out of a warehouse window and fell on a passing pedestrian. *Prosser and Keeton on the Law of Torts* (5th ed. 1984) § 39 at 243.

2. It must be caused by an agency or instrumentality within the exclusive control of the defendant.

3. It must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Medina v. Figuered*, 3 Haw.App. 186, 188, 647 P.2d 292, 294 (1982) (citing Prosser, *Law of Torts* § 39 at 214 (1978)).

Based on our examination of the record in this case, we conclude that the foregoing elements were not established satisfactorily so as to warrant application of the res ipsa loquitur doctrine.

### 1. Event of a Kind Not Ordinarily Happening Without Someone's Negligence

 The first element for application of the doctrine, that the event does not ordinarily occur in the absence of negligence, is another way of stating an obvious principle of circumstantial evidence: that the event must be such that, in the light of ordinary experience, gives rise to an inference that someone must have been negligent. Keeton, *supra*, § 39 at 244.

This element is met if, "in the abstract, the event at issue is one that gives rise to the 'reasonable probability that in the ordinary course of events the [incident] would not have occurred without negligence.'" *Calabretta v. National Airlines, Inc.*, 528 F.Supp. 32, 35 (E.D.N.Y.1981) (quoting *United States v. Ridolfi*, 318 F.2d 467, 470 (2d Cir.1963)). In other words, a plaintiff must show that the event is "of a type that normally does not occur unless *someone* has been negligent." *Lynden Transport, Inc. v. Haragan*, 623 P.2d 789, 794 (Alaska 1981).

 Thus, where an accident occurs that in the normal course could have happened without negligence on someone's part, the first element is not met. Restatement (Sec-

ond) of Torts § 328D, comment on clause (a) of subsection (1) at 158 (1965). As Professors Prosser and Keeton point out:

[T]here are many accidents which, as a matter of common knowledge, occur frequently enough without anyone's fault. A tumble downstairs, *a fall in alighting from a standing bus or street car*, an ordinary slip and fall, a tire of an ordinary automobile which blows out, a skidding car, a staph infection from an operation, a fire of unknown origin, will not in themselves justify the conclusion that negligence is the most likely explanation; and to such events res ipsa loquitur does not apply.

Keeton, *supra*, § 39 at 246 (footnotes omitted, emphasis added).

 Similarly, "where there are two equally probable and efficient causes of the accident shown either by the pleadings or by the evidence, or where two equally plausible inferences can be drawn as to the likelihood of negligence being or not being the cause of plaintiff's injury," the doctrine of res ipsa loquitur is not applicable. 57B Am.Jur.2d *Negligence* § 1856 at 523 (1989) (footnotes omitted).

 In this case, Encarnacion fell while alighting from a bus. It is common knowledge that people frequently fall from buses even when no negligence is involved. Furthermore, the evidence at trial gave rise to conflicting inferences, one leading to the conclusion that Defendants were negligent, and the other to the conclusion that they exercised due care. In view of this state of the evidence, Plaintiffs failed to establish the first element for application of the res ipsa loquitur doctrine.

### 2. Defendant's Exclusive Control [3]

 The "exclusive control" requirement for invocation of the res ipsa loquitur

---

3. Some jurisdictions have disavowed this requirement completely. *See, e.g., Parrillo v. Giroux Co., Inc.*, 426 A.2d 1313 (R.I.1981). Furthermore, the Restatement (Second) of Torts 2d (1965) does not require exclusive control by the defendant, but only that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence." *Id.* § 328 D.(b) at 156. Professors

Prosser and Keeton have observed that this element, which apparently was originally derived from the first edition of *Wigmore on Evidence*, should not be construed so strictly and literally as to lead to ridiculous results. Instead, a flexible, liberal approach should be used so that the element would be established if the apparent negligent cause of an accident is more likely than not to be the defendant's responsibility. *Prosser*

doctrine derives from the necessity to "bring home" to the defendant the negligence that is "in the air." Keeton, *supra,* § 39 at 248. " 'The purpose of this requirement is to link the defendant with the probability, already established, that the accident was negligently caused.' " *Id.* (footnote omitted). Even if an accident and its attendant circumstances "cry loudly of someone's negligence," the res ipsa loquitur doctrine will not apply unless the plaintiff produces evidence connecting the defendant as the negligent party. 57B Am. Jur.2d *Negligence* § 1853 at 520.

■ The burden is on the plaintiff, therefore, to trace the injury received to a cause or specific instrumentality for which the defendant was responsible, or to show that the defendant was responsible for all reasonable probable causes to which the accident could be attributed. *Id.* Whether the plaintiff has sustained this burden is a question of fact, unless the evidence is uncontradicted and does not permit varying inferences. *Id.* § 1900 at 564.

■ In this case, Encarnacion was injured when she fell from a stationary bus. She testified that her injuries were caused by the rear bus door, which opened and closed unexpectedly on her in rapid succession while she was attempting to exit the bus. However, there was substantial evidence at trial to support the trial court's conclusion that the rear door of the bus was working properly on the day in question, had not malfunctioned, and consequently was not responsible for Encarnacion's injuries. There was also substantial evidence that the rear door was "passenger-controlled," thus requiring action by Encarnacion before it could be opened. The presence of the second element was thus not established for invocation of the res ipsa loquitur doctrine.

### 3. *No Voluntary Action or Contribution on the Part of the Plaintiff*

■ The third element for invoking the doctrine of res ipsa loquitur, that the plaintiff did not contribute to the accident in question, is allied to the second element of exclusive control in the defendant. Keeton, *supra,* § 39 at 254. Its purpose is to eliminate the possibility that it was the plaintiff who was responsible for the accident, *id.,* and to aid the factfinder in determining whether it is more probable than not that the defendant was responsible for the occurrence. 57B Am.Jur.2d *Negligence* § 1911 at 577 (1989). If it reasonably appears that the accident might have been caused by the plaintiff's own conduct, the doctrine of res ipsa loquitur would not be applicable to infer the defendant's negligence. *Id.* § 1906 at 572.

■ In this case, substantial evidence was adduced at trial that Encarnacion may have fallen because she was loaded down, dizzy, lost her balance, or slipped while rushing to catch another bus. Encarnacion also admitted that she was not holding on to any part of the bus while she was exiting it. There was thus a strong inference that Encarnacion contributed to her injuries, thus precluding application of the res ipsa loquitur doctrine.

### B.

### *Procedural Effect of Applying the Res Ipsa Loquitur Doctrine*

The doctrine of res ipsa loquitur has been said to be particularly applicable to cases against common carriers arising out of personal injuries to passengers because:

(1) the contractual relationship between the carrier and the passenger makes it incumbent upon the carrier to transport him with safety, so that the burden of explaining its failure to perform its duty in this respect should fall upon the carrier,

(2) the cause of injury to a passenger, if not exclusively within the knowledge of the carrier, is generally not as well known to the passenger as to the carrier, so that the

and *Keeton on Torts* § 39 at 244, 249–51 (5th ed. 1984). The modern trend seems to be to apply a "flexible common sense approach" in which control is defined as the "degree of dominion sufficient to identify the defendant [or defendants]

with probability as the party responsible for the plaintiff's injuries." *See, e.g., Calabretta v. National Airlines, Inc.,* 528 F.Supp. 32, 36 (E.D.N.Y. 1981). We adopt this modern approach in construing the second element.

passenger should not assume the burden of explanation, and

(3) the injury to a passenger by a carrier is ordinarily an event that does not occur when the carrier is exercising due care, so that the fact of injury affords a natural presumption or inference that care was lacking.

Annotation, *Application of Res Ipsa Loquitur Doctrine to Accidents Incurred by Passenger while Boarding or Alighting from a Carrier,* 93 A.L.R.3d 776 § 2 at 780 (1979) (footnote omitted).

Plaintiffs argue that because MTL is a common carrier and Encarnacion was injured while she was a passenger on MTL's bus, the doctrine of res ipsa loquitur should automatically have been applied to shift the burden to Defendants to prove that Encarnacion's injury was not due to their negligence. We disagree.

We note, first of all, that even where common carriers are involved, the doctrine has been held inapplicable where:

the act or thing which was the proximate cause of the [passenger's] injuries was to be expected in the normal operation of the carrier's transportation facilities, or where it appeared that the cause of the injuries was plainly outside the control of the carrier and had no connection with its conveyances or the acts of its employees, or where it appeared that the cause of the injuries was as well known to the passenger as to the carrier, or where the evidence clearly showed a definite cause of the injuries.

*Id.* (footnote omitted).

For example, in *Cannamore v. Bi–State Development Agency,* 484 S.W.2d 308 (Mo.1972), a passenger sought to apply the res ipsa loquitur doctrine in a tort action to recover damages for personal injuries sustained in a fall while alighting from the defendant's bus. The evidence indicated that all of the plaintiff's companions had exited the bus without difficulty. However, when plaintiff attempted to alight the bus, her foot got caught on one of the steps of the bus and she was, in her own words, "just thrown plumb face off the bus." The Missouri Supreme Court concluded that the nature and character of the particular occurrence did not permit an inference of negligence to be drawn. The court reasoned:

As a matter of common knowledge and experience, it is inherent in the act of descending steps, whether bus, basement, residential, or commercial, that there will be occasional falls not attributable to the negligence of anyone. "Where a passenger falls down and is injured, while boarding or alighting from a carrier which is stationary, it cannot be said that negligence is a more probable explanation than any other. Common experience shows that people are likely to fall while boarding or alighting from streetcars, busses and other types of transportation without negligence on the part of anyone ... Such accidents *do* ordinarily occur without the fault of others. . . . Such accidents happen every day. The probability of negligence is absent."

484 S.W.2d at 310 (quoting *Gray v. City and County of San Francisco,* 202 Cal.App.2d 319, 325–26, 20 Cal.Rptr. 894, 898–99 (1962)). *See also Brown v. Capital Transit Co.,* 127 F.2d 329 (D.C.Cir.1942), *cert. denied,* 317 U.S. 632, 63 S.Ct. 61, 87 L.Ed. 510 (1942); *Coleman v. Boston Elevated Ry. Co.,* 249 Mass. 155, 143 N.E. 819 (1924); *Sweeney v. Village of Ellsworth,* 135 Minn. 474, 159 N.W. 1067 (1916).

Moreover, even when the doctrine of res ipsa loquitur is applicable, its effect is merely to "[r]aise a rebuttable inference which allows a plaintiff to get his case to the jury," *Turner,* 59 Haw. at 324, 582 P.2d at 714 (citing *Winter v. Scherman,* 57 Haw. 279, 282, 554 P.2d 1137, 1139 (1976)), and thus avoid a directed verdict in the defendant's favor. The job of weighing the inference of negligence against the defendant's evidence then becomes a matter for the jury. *Ciacci,* 33 Haw. at 264. As long as a "case is one in which there is a choice to be made between conflicting inferences as to which reasonable men may differ," the factfinder is permitted, but not compelled, to infer negligence. *Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 87, 412 P.2d 669, 678, *reh'g. denied* 49 Haw. 267, 414 P.2d 428 (1966)

(citing Prosser, *Res Ipsa Loquitur in California*, 37 Calif.L.Rev. 183, 217–21 (1949)). The invocation of the doctrine thus does not establish a presumption of negligence or shift the burden of proof. *Wilson v. United States*, 645 F.2d 728, 730 (9th Cir.1981).

Plaintiffs suggest that since MTL is a common carrier, we should follow the practice of some jurisdictions, which hold that invocation of the doctrine establishes a presumption of negligence on the part of the carrier. The Hawai'i Supreme Court, in *Cozine*, however, expressly held that even in cases brought by a passenger for hire against a common carrier, only an inference of negligence was warranted. 49 Haw. at 85, n. 3, 412 P.2d at 677, n. 3.

### III.

#### Contributory Negligence

The trial court concluded that Encarnacion "was not exercising due care for her own safety by not holding on to any part of the bus as she exited." COL No. 5. The court also determined that Encarnacion was more than fifty percent responsible for her accident, thus barring any recovery by Plaintiffs against Defendants on contributory negligence grounds. COL No. 6.

Plaintiffs allege that there is no support in the record for the foregoing conclusions. We disagree.

Encarnacion herself admitted that she was not holding on to a rail or any other part of the bus when she was exiting through its rear door. There was also circumstantial evidence that Encarnacion may have slipped because she was dizzy, rushing to catch the Foster Village bus, or off balance because she was carrying two bags. Since the trial court concluded that no other passengers had experienced trouble with the rear door and that the rear door was working properly, COL No. 3, its conclusion that Encarnacion was more responsible for her fall than Defendants was not wrong.

Affirmed.