[Civ. No. 12303. Third Dist. Jan. 8, 1970.]

GREYHOUND LINES, INC., Petitioner, v.
THE SUPERIOR COURT OF SHASTA COUNTY, Respondent;
MARY CHISEFSKI et al., Real Parties in Interest.

## COUNSEL

Carroll, Davis, Burdick & McDonough, John K. Steward and Richard B. McDonough for Petitioner.

No appearance for Respondent.

Jack Halpin, Garry, Dreyfus, McTernan & Brotsky, William F. Schuler and Benjamin Dreyfus for Real Parties in Interest.

## OPINION

**REGAN, J.**—In September 1964, a certain 1962 GMC passenger bus owned by petitioner Greyhound Lines, Inc., while enroute from San Francisco to Vancouver, British Columbia, was involved in a collision with a truck in Shasta County, California. Five persons, passengers in

the bus, filed actions for personal injuries against petitioner in the Shasta County Superior Court alleging in their complaints that the defendants[1] were negligent in their ownership, operation and maintenance of the two vehicles involved in the accident. In addition, plaintiffs alleged in separate causes of action that Greyhound was negligent in failing to equip its bus with passenger seat belts.

Thereafter, Greyhound demurred to those causes of action in each of the complaints which alleged that Greyhound was negligent in failing to equip its bus with passenger seat belts. All demurrers were identical, and were filed on the ground that the court lacked jurisdiction over this particular subject matter.

Greyhound's demurrers to the Shasta County actions were overruled.[2]

Greyhound subsequently answered the Shasta County complaints and filed a motion for partial summary judgment directed to those causes of action in the complaints alleging that Greyhound was negligent in failing to equip its bus with passenger seat belts. Greyhound's motion was denied and the cases have now been consolidated for trial.

By this petition for an alternative writ of prohibition petitioner asks this court to direct the Shasta County Superior Court to desist and refrain from any further proceedings in those causes of action which allege petitioner was negligent in failing to equip its bus with passenger seat belts.

The issue here is whether it is a question for the trier of fact to determine if petitioner was negligent in failing to so equip its passenger bus. Greyhound's basic contention is that, as a matter of public policy, the installation of safety belts on passenger stages should be a matter for legislative or administrative determination and not be subject to the varying determinations of juries in individual cases.

■ It is now a matter of common knowledge that safety belts are effective in reducing fatalities and minimizing injuries in motor vehicle collisions. (*Mortensen* v. *Southern Pac. Co.* (1966) 245 Cal.App.2d 241,

[1] In addition to petitioner, the Greyhound bus driver, the driver of the other vehicle, and other parties were named as defendants.

[2] Another passenger aboard the bus filed an action in the San Francisco County Superior Court for damages for personal injuries arising out of the accident. That person also alleged, inter alia, that Greyhound was negligent in failing to equip its bus with passenger seat belts.

Thereafter, Greyhound demurred to that cause of action in the complaint which alleged that Greyhound was negligent in failing to equip its bus with passenger seat belts.

On March 15, 1965, the San Francisco Superior Court sustained Greyhound's demurrer without leave to amend. Said demurrer was sustained on the basis that the federal government has preempted the area of regulation of safety equipment on interstate passenger motor carriers.

243 [53 Cal.Rptr. 851]; (1965) 38 So.Cal.L.Rev. 733; (1967) 19 U.Fla. L.Rev. 635; (July 1968) 35 Ins. Counsel J. 432; (July 1967) 34 Ins. Counsel J. 349; Message From The President Of The United States, Transmitting The Second Annual Report On The Administration Of The Highway Safety Act of 1966, Pursuant To The Provisions Of Section 202 Of That Act, 91st Congress, 1st Session, Document No. 90-109, April 29, 1969, pp. 3, 4, 16, 18.)[3] In this connection we note that as early as 1889 the California Supreme Court declared that carriers must keep pace with science and art and modern improvement in their application to the carriage of passengers. (*Treadwell* v. *Whittier* (1889) 80 Cal. 574, 592, 600 [22 P. 266, 13 Am.St.Rep. 175, 5 L.R.A. 498].)

█ In California the standard of care imposed on passenger carriers is statutory, i.e., that of utmost care and diligence. In this connection, we note that sections 2100 and 2101 of the Civil Code provide as follows:

"2100. A carrier of persons for reward must use the utmost care and

---

[3]This report commences its tragic recitation as follows:

"Death on the nation's highways hit an all time high in 1968, when an estimated 55,500 people died in motor vehicle crashes.

". . . . . . . . .

"The dimensions of the problem extend beyond the death and injury totals, for each American family also suffered an average financial loss estimated at $291 as a result of highway crashes in 1968—a total loss of almost $15 billion." (P. 3.)

"SPEED AND CRASH SURVIVABILITY

"While the use of alcohol undoubtedly has emerged as a dominant, if not the primary, factor contributing to the causation of crashes, the vehicle is the dominant factor determining the severity of bodily injuries once a crash occurs. Its structural strength, interior padding, its seat belts and shoulder harnesses (when worn by the occupants), the placement of knobs and projections on the instrument panel undoubtedly determine crash survivability. Research data pinpointing dangerous interior features of an unprotected vehicle are shown in Table 2. The highest rates of potentially fatal injuries occur to both passengers and drivers when their heads or chests impact the steering assembly, instrument panel or windshield. Without the protection of proper 'packaging' a rider in a crash continues moving at the pre-crash speed of the vehicle and, consequently, hits some part of the vehicle at this speed." (P. 4.)

"SAFETY BELTS

"There is abundant evidence that the use of safety belts provides a sizeable improvement in safety, both in preventing death and limiting injuries." (P. 16.)

"Specific examples of seat belt effectiveness are available. Data reported by Florida and Nebraska for the period 1965 through 1967, indicate that the death rate per crash was 56 percent higher when occupants did not wear belts. These estimated savings in lives were obtained primarily with the simple lap belt design. The combination lap and upper torso restraint now requried by the Federal standard had demonstrated an even higher potential for preventing death and injury. As reported last year, a study in Sweden of 28,000 crashes involving over 37,000 unbelted and belted front seat occupants by N. I. Bohlin revealed that restraints of this type produced reductions of about 30 percent for minor injuries and 80 percent for those of fatal severity. Nonbelted occupants sustained fatal injuries at speeds as low as 12 m.p.h., while *none* of the belted occupants was fatally injured at crash speeds as high as 60 m.p.h.

"These data suggest that perhaps 8,000 lives could have been saved in crashes last year if combination lap and shoulder belts were installed and used in every car." (P. 18.)

diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

"2101. A carrier of persons for reward is bound to provide vehicles safe and fit for the purposes to which they are put, and is not excused for default in this respect by any degree of care."

■ The California cases also take cognizance of the rule that the duty of care owed to a passenger by a common carrier includes the use of the utmost care and diligence for his safe carriage. (*McBride* v. *Atchison, T. & S. F. R. Co.* (1955) 44 Cal.2d 113, 115-116 [279 P.2d 966]; *Gray* v. *City & County of San Francisco* (1962) 202 Cal.App.2d 319, 323 [20 Cal.Rptr. 894].)

Our attention has not been drawn to any precedent regarding a mandatory provision for the furnishing of safety belts by common carriers. ■ Nevertheless, where the evidence is such that reasonable men might fairly differ as to the answer to the question posed, the issue is one of fact for the jury to determine. (See *Polk* v. *City of Los Angeles* (1945) 26 Cal.2d 519, 528 [159 P.2d 931].) ■ As stated in *Toschi* v. *Christian* (1944) 24 Cal.2d 354, 360 [149 P.2d 848]: "In other words, the actor's conduct must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law."

■ Since we are here unhampered by any controlling federal law or regulation, we conclude that under current California decisional law it is for the jury to decide whether the carrier's failure to provide seat belts amounted to negligence. (See *Mortensen* v. *Southern Pac. Co., supra,* 245 Cal.App.2d 241; *Truman* v. *Vargas* (1969) 275 Cal.App.2d 976 [80 Cal. Rptr. 373].) The toll of highway injury and death is such that judicial policy should be against deferment to legislative inaction and in favor of having juries pass upon the question until such time as the Legislature may choose to adopt supervising safety regulations.

Petitioner urges at great length that the state courts have no legitimate concern in this area. Although petitioner lists and argues several contentions, its most serious seem to be that the federal government (or, more precisely, the Interstate Commerce Commission) has preempted the field and that any state action in this regard would impose an unconstitutional burden on interstate commerce. Petitioner cites many cases concerning state laws or regulations and their impact on interstate commerce. The

cases cited are not analogous to the situation presented here and serve merely to becloud the issue.[4] There is here no violation of statute or regulation. We think the arguments of petitioner miss the mark.

The writ is denied. The order to show cause is discharged.

Friedman, Acting P. J., and Janes, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied March 4, 1970. McComb, J., was of the opinion that the petition should be granted.

---

[4]Greyhound has cited *Robinson* v. *Lewis* (Ore. 1969) 457 P.2d 483, as support for its position. That case held, inter alia, that there is no common law duty to wear seat belts in ordinary vehicular travel. The Oregon court also held that the task of investigating and testing utility of safety devices and of determining when their use should be made mandatory can best be performed by the legislature. But we are not here concerned with *compelling* passengers to fasten their safety belts; rather, we are concerned with whether Greyhound should have made safety belts *available* to its passengers in light of the present knowledge that such devices reduce fatalities and minimize injuries.