**BROMLEY–HEATH MODERNIZATION COMMITTEE et al., Plaintiffs-Appellants,**

v.

**BOSTON HOUSING AUTHORITY et al., Defendants-Appellees.**

No. 72–1012.

United States Court of Appeals, First Circuit.

Heard April 4, 1972.

Decided May 10, 1972.

---

Marshall D. Stein, Roxbury, Mass., with whom Michael Feldman, Boston, Mass., and Alan Laufman were on brief, for appellants.

George F. Mahoney, First Asst. Counsel, Boston, Mass., with whom Paul F. Liston, Gen. Counsel, Boston, Mass., was on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is a challenge to the alleged failure of the Boston Housing Authority to provide adequate security for persons at three adjoining low-rent housing projects, Bromley Park, Heath Street, and Bickford Street, all established under the National Housing Act and subject to regulation by the Department of Housing and Urban Development (HUD). Plaintiffs are the Bromley-Heath Modernization Committee, named tenants in each of the projects, and named employees in the Martha Eliot Health Clinic, located on project grounds. Defendants are the Boston Housing Authority, the members of its board of directors, and several of its managerial employees.

Plaintiffs' claims, brought under 42 U.S.C. §§ 1408, 1441, 1983 and 2000d–1, and regulations promulgated thereunder, with jurisdiction based on 28 U.S.C. §§ 1331, 1343(3) and 1343(4), fall into two groups. The first of these concerns primarily a HUD circular entitled "The Social Goals of Public Housing", issued on March 22, 1968, and addressed to various persons including "Public Housing Authorities". Plaintiffs contend that the circular obligated the defendants to supply adequate security, and that their failure to do so is a violation of the circular, a breach of leases alleged to incorporate the circular, an act of negligence, and a nuisance.

The district court, finding the circular merely advisory, dismissed these allegations for failure to state a claim upon which relief could be granted.[1] Plaintiffs' second group of claims arises out of an assertedly disproportionate allocation of security forces to the housing for the "elderly" as compared with those provided for the "family" units. Plaintiffs discern both a denial of equal protection to those in the family section and a denial of equal protection to blacks, who allegedly constitute a large percentage of those in the family section but a small percentage of those in the elderly section. As to these claims, the district court declined to grant a motion to dismiss, but later, on the basis of affidavits, granted summary judgment for the defendants. Plaintiffs appeal from the court's rulings on both groups of claims.

The circular on which plaintiffs rely begins in a tone hardly suggestive of compulsion:

"This circular is intended to spell out the major social objectives of the low-rent housing program, and to stress the urgency of an intensive new effort to achieve them.

"We are convinced that more can and must be done to improve the quality of life for residents of public housing. The Department is committed to an all-out effort to bring this about.

"A thorough and searching examination of our policies, practices, and priorities is called for to see that they are in line with our social objectives. We ask for your full support in this effort."

Plaintiffs would have it that, after a listing of social objectives, the circular gets down to business:

"I would like you to begin immediately to implement the following specific recommendations.

1. The court dismissed the first group of claims on the additional ground that plaintiffs failed to satisfy the jurisdictional amount requirement of 28 U.S.C. § 1331. Our view of the merits of these claims makes it unnecessary to decide whether their allegations were adequate in that respect or whether 28 U.S.C. §§ 1343(3) or (4) is an independent source of jurisdiction. *See* Gomez v. Florida State Employment Service, 417 F.2d 569, 580 (5th Cir. 1969).

*Updating Management Policies and Practices*

There are a number of policies and practices which should be reviewed and when appropriate, the following changes made:

■ The provision of adequate measures for safety and security of tenants."

We simply do not read "I would like you to begin" as more than exhortation. And, though plaintiffs put great stock in it, "immediately" does not transform the wish into a command. The subsequent use of "should", which supplies the only even arguable support for the proposition that the circular was meant to be mandatory, is undermined by the indefiniteness of "when appropriate", a standard which could presumably be applied either by HUD or by the local housing authority.

No more persuasive is plaintiffs' argument by internal contrast. The section "Tenant Participation", which follows "Updating Management Policies and Practices", begins:

"Management should assume the responsibility for encouraging and assisting tenants to get together to solve problems, pool ideas and expand their capacities through self-help and self-determination. Some suggestions follow:"

At base, plaintiffs' argument is that HUD would have used "suggestions" to introduce "Updating Management Policies and Practices" if it had meant the items listed there to be merely precatory. If anything, however, plaintiffs' position is further weakened by the quoted language. In particular, "should" is used here as well, even though tenants could manifestly not by suit compel defendants to encourage tenants to "expand their capacities through self-help". Moreover, the fact that "Tenant Participation" is parallel to "Updating Management Policies and Practices" within the structure of the circular suggests that they ought to be given similar constructions.[2]

Other aids to construction do not alter what seems apparent from the face of the circular. The circular found mandatory by the Supreme Court in Thorpe v. Housing Authority, 393 U.S. 268, 272 n. 8, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), was terse and specific, used "essential" and "shall", was later incorporated into the HUD Low-Rent Management Manual, and had been preceded by an advisory circular ("[W]e strongly urge, as a matter of good social policy. . . .") not incorporated into the Manual. In that case HUD itself "confirmed unequivocally" its view that the circular was mandatory. 393 U.S. at 276, 89 S. Ct. 518. In contrast, the present circular is discursive, was not made part of the Manual or its replacements and resembles less the *Thorpe* circular than its predecessor. And though aware for some time of the present case, HUD has not affirmed that the circular is mandatory. While none of these items, standing alone, is dispositive, together they weigh heavily against the plaintiffs' claim.[3]

Plaintiffs direct our attention to a number of other circulars and to the 1970 Amendments to the Housing and Urban Development Act. Cast as sup-

2. The circular closes on the hortatory note with which it began:
"All of our social goals require mutual cooperation and trust between management and tenant. The initiative is with management to move ahead, now. This is our challenge."

3. An added point may be made from plaintiffs' own assertion. In order to demonstrate the existence of the necessary jurisdictional amount under 28 U.S.C. § 1331, they have calculated the cost of providing security at $500,000. The magnitude of the figure does not so much astonish us as unreasonable as it makes it highly unlikely that a similar calculation would not occur to the drafters of the HUD circular. By the same token we deem it most improbable that HUD would bury the demand for so overwhelming an expenditure in a mild, general-purpose circular.

porting players, later circulars do not change the role of the lead. The mere circumstances that the "Social Goals" circular has subsequently been referred to and that it has not apparently been cancelled do not make it mandatory— there is nothing in the nature of an advisory circular to preclude a long life.[4] Plaintiffs' argument, citing legislative history, that the "Social Goals" circular "carries out the clear congressional intent to provide a safe environment" relates to HUD's authority to issue a mandatory circular, not to whether this circular is mandatory.

■ Plaintiffs' affidavits attesting to beatings, rapes, thefts and other crimes at Bromley-Heath portray a tragically fear-filled community. Yet the issue before us is not the seriousness of the conditions, but whether HUD, by its "Social Goals" circular, intended to compel action by the Housing Authority. To interpret this circular as being mandatory would be to deprive HUD of the linguistic tools for communicating broad policy guidelines in non-compulsory terms. We therefore affirm the district court's dismissal of the claim based upon the circular and of the subsidiary breach of lease, negligence and nuisance claims.

■ As indicated above, plaintiffs made two related equal protection claims, one general and the other racial, both based upon the assertion that the housing for the "elderly" receives greater protection than do the "family" sections of the projects. In support of their Rule 56 motion for summary judgment, defendants submitted the affidavits of defendants Gulinello and Donovan, each of whom described the plan for coverage of the projects by the Boston police and the supplemental protection provided by the Housing Authority. In response, plaintiffs submitted two affidavits recording observations of police

activity in the projects during a six-day period, and stating that the absolute level of coverage was less than indicated by defendants' affidavits and that the housing for the elderly received relatively more of the protection than was indicated by the defendants' affidavits. Even fully crediting plaintiffs' rather than defendants' affidavits, however, the general equal protection claim must fail. The provision of greater security for the elderly is within the Housing Authority's discretion, or, stated doctrinally, is a reasonable regulation in pursuit of a permissible goal. McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960). Accordingly, summary judgment was appropriate.

The racial claim stands on a different footing. The complaint does not allege, and defendant Donovan's affidavit denies, a racial motive. The complaint states, rather, that "the family units at Bromley-Heath are occupied almost exclusively by black residents, and that the occupants of the elderly units are almost exclusively white"; that those in the family units have as great a need for security measures as those in the elderly units; and that the security measures provided, though grossly inadequate, have been offered "primarily" for the benefit of the elderly. The district court granted summary judgment to defendants on this cause of action, because plaintiffs had not submitted affidavits showing the specific racial composition of the two sections.

■■ Defendants, however, had not contested by affidavit that the racial mix was as alleged by plaintiffs. On a motion for summary judgment, the moving party has the burden of showing "that there is no genuine issue as to any material fact". F.R.Civ.P. 56(c); Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

---

4. Plaintiffs point to another HUD circular, entitled "Supplemental Protective Services Chargeable to Operating Expenses for Low-Rent Public Housing" (May 26, 1971), as independently imposing a duty on the Housing Authority to provide adequate security. This circular was not presented to the district court, and we express no opinion as to its effect.

Defendants not having by affidavit denied the allegation, plaintiffs were not obliged to submit a counteraffidavit, even though plaintiffs would at trial bear the burden of establishing the racial impact. *See* Adickes v. Kress & Co., *supra*, 398 U.S. at 159–161, 90 S.Ct. 1598. 6 ·Moore's Federal Practice ¶ 56.15 [3], at 2342.

 ·This observation may allow plaintiffs to approach the plate, but does not mean that they have connected with the ball. Indeed, we cannot refrain from observing that even a home run on this cause of action would result in precious little advantage—a greater share of "grossly inadequate" police protection, and at the price of taking it from the elderly units.[5] More pertinently, the basic plan of police assignments, agreed to by defendants and the City of Boston, calls for 86.6 per cent of patrol time to be spent in the family areas and 13.4 per cent in the elderly area. Plaintiffs do not by affidavit make the substance of the plan an issue of fact and in their brief concede that this percentage "would relate somewhat closely to the percentage of area needed to be patrolled". Their grievance lies in their conclusion, based on the observations of two affiants over a six-day period, that while no police at all were observed for three-quarters of the observation time, almost half of the observed police time was spent near the elderly units. In other words, their grievance lies against city officials and the Boston police for failue to furnish protection according to the plan. But none of these is a party to this litigation, and we do not presume to search for a duty on the part of the housing authority to compel execution of the plan in the absence of any allegation to that effect. We therefore affirm the granting of summary judgment.

Affirmed.

5. Our disposition makes it unnecessary to consider whether younger blacks in the family units and elderly whites in the other units are, but for race, "similarly situated" or which party has the burden of proof to establish similarity or dissimilarity in a racial impact case.