[Civ. No. 34731. First Dist., Div. Two. Aug. 19, 1975.]

ANIS DABIS et al., Plaintiffs and Appellants, v.
SAN FRANCISCO REDEVELOPMENT
AGENCY, Defendant and Respondent.

**COUNSEL**

Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen, Allan Brotsky and Ruth M. Friedman for Plaintiffs and Appellants.

Henry F. Davis, Michael A. Di Santo, and Richard M. Thomas for Defendant and Respondent.

**OPINION**

**THE COURT.**\*—Dabis, the owners of adjacent private property, appeal from an order granting the San Francisco Redevelopment Agency's motion for a new trial on grounds of an error of law in an instruction, after a jury returned a verdict of $6,500 in Dabis' action for property damages. The agency contends that the order granting the new trial was proper as section 7211.1 of the Urban Renewal Handbook is not mandatory and is, therefore, inappropriate as a jury instruction, as it does not create a legal duty. The question is one of first impression in this state.

Dabis' proposed instruction was given as follows: "You are instructed that Section RHA 7211.1 of the Urban Renewal Handbook issued by the United States Department of Housing and Urban Development [HUD] provides that, 'It is the responsibility of the LPA (Local Public Agency), in the administration of its property management program to *provide maximum security to those residing in project property. In order to carry out this responsibility, it will be necessary for the LPA to provide a high level of security and protection to project residents and private property.*'

"You are instructed that the defendant SAN FRANCISCO REDEVELOPMENT AGENCY is a local public agency within the meaning of this regulation." (Italics supplied.)

██ A legislative regulation is promulgated by an administrative agency pursuant to its rule-making powers. A regulation reasonably adapted to the administration of a legislative act has the force and effect of law (*Duke Molner etc. Liquor Co.* v. *Martin,* 180 Cal.App.2d 873, 884 [4 Cal.Rptr. 904]; *General Services Administration* v. *Benson* (9th Cir. 1969) 415 F.2d 878, 880). ██ Legislative regulations of HUD issued

---

\*Before Taylor, P. J., Kane, J., and Rouse, J.

pursuant to congressional authorization are binding on local agencies that administer housing act funds (*Housing Auth. of City of Omaha, Neb.* v. *United States H.A.* (8th Cir. 1972) 468 F.2d 1; *Thorpe* v. *Housing Authority,* 393 U.S. 268 [21 L.Ed.2d 474, 89 S.Ct. 518]). In *Thorpe,* the United States Supreme Court held that a HUD circular pertaining to the management of federally assisted low rent housing was mandatory because it was promulgated pursuant to the statutorily created "general rule-making power" of HUD.[1]

Subsequently, the United States Supreme Court reaffirmed its *Thorpe* ruling in *Lau* v. *Nichols,* 414 U.S. 563 [39 L.Ed.2d 1, 94 S.Ct. 786], and in *Mourning* v. *Family Publications Service, Inc.,* 411 U.S. 356 [36 L.Ed.2d 318, 93 S.Ct. 1652]. The court in *Lau,* citing *Thorpe,* found binding a HEW[2] guideline that required a school district to provide training for non-English-speaking pupils as a condition to receipt of federal aid. In *Mourning,* the validity of a regulation of the Federal Reserve Board was at issue; the court, quoting *Thorpe,* said at page 369 [36 L.Ed.2d at pp. 329-330]: "Where the empowering provision of a statute states simply that the agency may 'make. . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.' "[3]

HUD's rule-making power over urban renewal projects is derived from 42 United States Code section 1455(c)(1), that directs the secretary of HUD to "issue rules and regulations. . .implementing the requirements of this subsection and in otherwise achieving the objectives of this subchapter." Subchapter II entitled "Slum Clearance and Urban Renewal" is one of three subchapters of chapter 8A of title 42 of the United States Code, "The Public Health and Welfare." Subchapter II contains two parts; Part A, "Urban Renewal Projects: Demolition Programs, and Code Enforcement Programs," contains sections 1450 through 1468a.

---

[1] The court indicated that changes in the manual are initially promulgated as circulars and although not yet physically incorporated into the manual have the same effect. The circular in question was in fact incorporated into the manual eight months after it was initially promulgated. (Id. at p. 275 [21 L.Ed.2d at p. 480].)

[2] The acronym stands for the Department of Health, Education and Welfare.

[3] More recently, the *Thorpe* rule has been reiterated in: *Brown* v. *Housing Authority of City of Milwaukee* (7th Cir. 1972) 471 F.2d 63, 64; *Rockville Reminder, Inc.* v. *United States Postal Service* (2d Cir. 1973) 480 F.2d 4, 7; *National Petroleum Refiners Association* v. *F. T. C.* (D.C. Cir. 1973) 482 F.2d 672, 689; *Johnson's Professional Nursing Home* v. *Weinberger* (5th Cir. 1974) 490 F.2d 841, 844; and *Alford* v. *United States* (N.D. Ohio 1973) 369 F.Supp. 1339, 1341.

■ RHA 7211.1 of the Urban Renewal Handbook here in issue was promulgated pursuant to section 1468a of subchapter II and hence was issued pursuant to the express statutory authority of 42 United States Code section 1455(c)(1). RHA 7211.1 thus clearly comes within the rule of *Thorpe* and is binding upon the local agency. Accordingly, it was not error for the jury to be instructed to utilize the standard of care mandated by a regulation promulgated pursuant to statutory authority. *Porter* v. *Montgomery Ward & Co., Inc.*, 48 Cal.2d 846 [313 P.2d 854], so held (at p. 847) concerning an instruction based on a State Division of Industrial Safety safety order.

The agency erroneously relies on *Ranjel* v. *City of Lansing* (6th Cir. 1969) 417 F.2d 321 [15 A.L.R. Fed. 605], *Shannon* v. *United States Dept. of Housing & Urban Dev.* (E.D. Pa. 1969) 305 F.Supp. 205, and *Bromley-Heath Modern. Com.* v. *Boston Housing Auth.* (1st Cir. 1972) 459 F.2d 1067. The agency cites the following dicta in *Ranjel* (at p. 323) with reference to a HUD manual, ". . . in our judgment the manual does not rise to the dignity of federal law. . ." *Ranjel,* however, only involved the question of whether the court would enjoin a referendum on an ordinance of the city council of Lansing amending a zoning ordinance to authorize a federally funded low cost housing project. The court did not reach the question of whether a HUD regulation regarding choice of project sites controlled the referendum provisions of the city charter, and allowed the election to proceed, deferring until later any ruling on the validity of the measure (p. 325). The agency relies on the district court decision in *Shannon* that was subsequently reversed (436 F.2d 809) and generally supports Dabis' position here, although the issue there presented was not pertinent here.

In *Bromley-Heath, supra,* the First Circuit held that a particular HUD circular was not mandatory as, unlike the circular in *Thorpe* and the regulation in the instant case, it was not incorporated into the HUD handbook and the language used was discursive ("I would like you to begin. . .") The regulation in the instant case, like that in *Thorpe,* was incorporated into the permanent HUD handbook and is also phrased in terse and mandatory language: ". . .*it will be necessary* for the LPA to provide a high level of security and protection. . ." (Italics supplied.) The remaining authorities cited by the agency, *Donovan* v. *United States* (D.C. Cir. 1970) 433 F.2d 522, and *Piccone* v. *United States* (Ct. Claims 1969) 407 F.2d 866, are equally inapposite.

The agency's argument that the regulation in question is unconstitutional for vagueness and overbreadth is inappropriate in the context of

this case and unpersuasive. The language of the regulation "a high level of security and protection" is analogous to the standard of care owed by a common carrier to its passengers—"utmost care and diligence for their safe carriage" (Civ. Code, § 2100)—that has never been considered vague by any court (*Greyhound Lines, Inc.* v. *Superior Court,* 3 Cal.App.3d 356, 359 [83 Cal.Rptr. 343]).

The agency, citing *Sebrell* v. *Los Angeles Ry. Corp.,* 31 Cal.2d 813 [192 P.2d 898], further argues that the instant instruction, quoted above, was contradictory and, therefore, confusing to the jury. In *Sebrell,* the court held (at p. 817) that "Instructions that are contradictory in essential elements may warrant the reversal of a judgment on the ground that it cannot be ascertained which instruction was followed by the jury." However, the court in *Sebrell* also indicated ". . .that instructions. . .may include in addition to a general rule a special rule applicable only in particular circumstances and that the special rule qualifies the general." Clearly, in the instant case, the instruction incorporating the higher standard of care of RHA 7211.1 merely qualified the general negligence instruction.[4] Thus, the agency's contention that the instructions were contradictory is not tenable. Under no reasonable interpretation could the instruction here in question have misled or confused the jury (*Paskil* v. *Leigh Rich Corp.,* 171 Cal.App.2d 488 [340 P.2d 741]).

■ If the agency did not provide the protection to Dabis' adjacent property, required by RHA 7211.1, its negligence is presumed. The record indicates that after the agency's building became vacant, Dabis complained to the agency about the unsecured nature of the building before the first burglary and on several occasions after the first and second burglaries. The agency did not board up the windows and secure its building in response to Dabis' repeated requests, until after the third burglary. The agency's defenses of contributory negligence and assumption of risk and the recently adopted doctrine of comparative negligence (*Li* v. *Yellow Cab. Co.,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]) need not be considered in light of the applicable law of negligence per se.

---

[4] So far as pertinent, this instruction read: "In this action, the plaintiff has the burden of establishing, by a preponderance of the evidence all of the facts necessary to prove the following issues: . . . . .
"2. That the defendant was negligent. . .
"3. That the negligence of the defendant was a proximate cause of injury and damage to the plaintiff; and
"4. The nature and extent of the injuries claimed to have been so suffered, the elements of plaintiff's damage and the amount thereof."

■ While a new trial may be granted on the ground that the jury was erroneously instructed on the applicable law (Code Civ. Proc., § 657; *Hart* v. *Briskman,* 110 Cal.App.2d 194 [242 P.2d 341]), if an instruction is correct as a matter of law, a trial judge has no discretion to grant a new trial on that ground (*Bruck* v. *Adams,* 259 Cal.App.2d 585 [66 Cal.Rptr. 395]). Accordingly, the order granting the new trial must be reversed.

The order granting the new trial is reversed; the judgment of the trial court is reinstated and affirmed.