593 F.2d 1023
 192 U.S.App.D.C. 369
 NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES
v.
Alan K. CAMPBELL et al. (three cases).
Appeal of BLUE CROSS ASSOCIATION et al.
Appeal of AETNA LIFE INSURANCE COMPANY.
Appeal of the AMERICAN POSTAL WORKERS UNION et al.
NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES
v.
Alan K. CAMPBELL et al., Appellants.
 Nos. 76-2010, 76-2013, 76-2022 and 76-2023.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 22, 1977.
Decided May 9, 1978.
 
 Appeals from the United States District Court for the District of Columbia (D.C. Civil Action No. 76-1041).
 Julius Schlezinger, Washington, D. C., with whom Denis F. Gordon, James R. Barnett and Mozart G. Ratner, Washington, D. C., were on the brief, for appellants in No. 76-2022, and also argued for appellants in Nos. 76-2010 and 76-2013.
 John M. Rogers, Atty., Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Irving Jaffe, Deputy Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and William Kanter, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellants in No. 76-2023.
 John Cary Sims, Washington, D. C., with whom Alan B. Morrison, Larry P. Ellsworth and Kenneth L. Adams, Washington, D. C., were on the brief, for appellee.
 Philip S. Neal and Edward A. Lenz, Washington, D. C., were on the brief for appellants in No. 76-2010.
 Peter J. Connell, Leonard W. Belter and Matthew B. Van Hook, Washington, D. C., were on the brief for appellant in No. 76-2013.
 Before ROBINSON, MacKINNON and ROBB, Circuit Judges.
 Opinion for the Court filed by Circuit Judge ROBINSON.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 This appeal subjects to scrutiny the District Court's award of summary judgment to appellee, National Association of Government Employees (NAGE), in its Freedom of Information Act[1] suit against the Civil Service Commission. Error is attributed not only to that action but also to the court's denial of the Commission's countervailing motion for summary disposition in its favor. Our examination of the record has uncovered insuperable obstacles to summary judgment for either side. We accordingly reverse the judgment entered and remand the case for trial.
 
 
 2
 * NAGE requested the Commission to disclose the benefit and premium proposals submitted by major health insurance carriers in 1977[2] pursuant to the Federal Employees Health Benefits Act.[3] In the wake of that legislation, numerous health insurance plans have become available to federal employees, partly at governmental expense.[4] Only plans approved by the Commission are encompassed by the federal program,[5] and alterations of benefits or premiums under ongoing plans must garner the Commission's acceptance before they become effective.[6]
 
 
 3
 Commission regulations call upon participating health insurance carriers to submit all revisions of benefits and premiums under ongoing plans for the Commission's approval or disapproval.[7] At the time the instant controversy arose, changes in benefits were due by April 30 and modifications of premiums by July 31.[8] Following receipt of such proposals, the Commission negotiates with the carriers individually in an effort to secure for employees the most advantageous terms possible.[9] Packages ultimately to be offered by the carriers must be assembled in time for distribution of descriptive and explanatory literature to employees before the traditional November "open season," during which subscribers are free to switch from one plan to another.[10] These steps accomplished, approved revisions normally go into operation on January 1 of the year next ensuing.[11]
 
 
 4
 The Commission rejected, both at the initial[12] and appellate levels,[13] NAGE's request for copies of the carriers' 1977 proposals. Invoking the Freedom of Information Act, NAGE then commenced an action in the District Court for production of these materials.[14] The scope of its demand there, as previously before the Commission, was broad enough to intercept the original proposals in toto, as well as those emerging from negotiations.[15] Later, however, NAGE narrowed its bid to the descriptive portions of original proposals, thus eliminating supporting cost data,[16] and made clear that it desired nothing until after passage of the respective deadlines for submission.[17] The Commission and the several intervenors major health insurance carriers participating in the federal program[18] resisted the suit on the ground that the proposals were immune from mandatory disclosure.
 
 II
 
 5
 The Freedom of Information Act requires subject federal agencies to release properly-requested information save to the extent that it is specifically exempted.[19] The statutory exemptions are to be narrowly construed,[20] and an agency opposing divulgence bears the burden of demonstrating that the material in issue falls within an exempted category.[21] The Commission and the carriers have argued consistently that the health insurance proposals are shielded by Exemption 4[22] as "commercial or financial information obtained from . . . person(s) and privileged or confidential."[23] Since all of the litigants seemingly agree that the proposals incorporate data "commercial or financial" in nature[24] "obtained from" the carriers,[25] the only question remaining is whether those data are also "confidential" within the meaning of the exemption.[26]
 
 
 6
 As we proclaimed in National Parks & Conservation Association v. Morton,[27]
 
 
 7
 (a) commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain the necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.[28]
 
 
 8
 The Commission and the carriers contended, and NAGE of course disputed, that the health insurance proposals were exempt under each of these criteria, and the District Court agreed with NAGE on both counts. The arguments in this court have addressed the procedural as well as the substantive features of the court's rulings. Encountering a procedural flaw necessitating further proceedings in the District Court, we do not reach the merits of the case.
 
 
 9
 As stated earlier, both NAGE and the Commission sought summary judgment in the District Court. The Commission and the carriers filed affidavits buttressing the Commission's motion and opposing NAGE's;[29] NAGE tendered no affidavits of its own. The court granted NAGE's motion, concluding that the proposals had not been shown to be exempt under either of the National Parks tests. As to the first, the court was of the view that since carriers desiring to alter current contracts are statutorily required to present their proposals for change to the Commission, disclosure would not impair its ability to obtain information on which they are based.[30] With respect to the second test, the court believed that the Commission and the carriers had failed to meet "the burden of showing that disclosure of the initial benefit and premium proposals submitted by the participating carriers . . ., without any supporting justifying information, would result in substantial harm to the competitive position of any of those carriers. . . ."[31] The appeal by the Commission and the carriers summons us to examine at the outset the procedural propriety of summary judgment for NAGE and of the denial of summary judgment for the Commission.
 
 III
 
 10
 A motion for summary judgment is properly granted only when no material fact is genuinely in dispute, and then only when the movant is entitled to prevail as a matter of law.[32] In assessing the motion, all " inferences to be drawn from the underlying facts contained in (the movant's) materials must be viewed in the light most favorable to the party opposing the motion."[33] Indeed, "the record must show the movant's right to (summary judgment) 'with such clarity as to leave no room for controversy,' and must demonstrate that his opponent 'would not be entitled to (prevail) under any discernible circumstances.' "[34]
 
 
 11
 Summary judgment is unavailable if it depends upon any fact that the record leaves susceptible of dispute. Facts not conclusively demonstrated, but essential to the movant's claim, are not established merely by his opponent's silence; rather, the movant must shoulder the burden of showing affirmatively the absence of any meaningful factual issue.[35] That responsibility may not be relieved through adjudication since "(t)he court's function is limited to ascertaining whether any factual issue pertinent to the controversy exists (and) does not extend to (the) resolution of any such issue."[36]
 
 
 12
 Proper application of these well-settled principles to the case at bar would have necessitated, we think, denial of NAGE's motion for summary judgment. Though appellants ultimately have the onus of proving that the insurance proposals are exempt from disclosure,[37] it was incumbent upon NAGE to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.[38] Appellants came forth with affidavits alleging facts purporting to show that the documents sought by NAGE are exempt. The District Court, instead of searching merely to ascertain whether the case was devoid of factual questions, actually resolved lurking factual issues against them. Whether or not the resulting decision would have been warranted after a trial on evidentiary submissions by both sides a matter upon which we intimate no view it was inappropriate in the context of a motion for summary judgment.
 
 
 13
 In their affidavits, the carriers advanced several factual premises in support of their positions. Prominent among them was the assertion that the competitive advantage earned by a carrier developing an innovative benefit would be lost upon disclosure of the insurance proposals because other carriers could then add it to their own packages during the course of negotiations.[39] The District Court rejected this theory, stating:
 
 
 14
 The competing carriers would not have (the details of the innovation) since (NAGE) seek(s) disclosure of only a description of the benefits, and each carrier would have to make its own evaluation and computations in order to adapt such a benefit to its own program. In addition, in light of the possibility that any proposals initially submitted by a carrier could be subsequently dropped during negotiations, a competitor may not be so quick to blindly add a benefit to its program without full consideration of its feasibility. The Court cannot agree with (the) claim that a more efficient and innovative company would lose whatever advantage the current system gives it. Disclosure of its proposal will not affect the ability of a more efficient carrier to "offer a better product than its competitors," and another carrier who cannot afford such a product will not be any better able to provide similar services merely because it has learned a competitor has proposed a more attractive program.[40]
 
 
 15
 This, in our view, exceeded the legitimate bounds of issue-hunting and ventured into the realm of issue-adjudication. The carriers avowed that their innovations, once revealed, would be appropriated by rivals and that their competitive superiority would thereby be impaired. The court's rebuttal implicitly assumed that the logistics of adapting a carrier's ingenuity to other programs might preclude speedy implementation by competitors; it assumed as well that a prudent carrier would not supplement its own proposal with borrowed features to enhance its appeal absent full consideration of feasibility. These and other elements of the court's refutation are not to us so self-evident as to rob the dispute of all but one side. It may be that all the court said will eventually be proven true, but that is beside the point. The court's surmise, however, plausible on its face, cannot substitute for full-bodied proof. Unless a fact suitably advanced is plainly undemonstrable, the litigant is entitled to a fair opportunity to establish it by evidence, and to a hearing of his evidence before the fact is judicially assessed. The factual issues on competitive loss thus posed by the carriers and embellished by the court's analysis accordingly warrant full evidentiary trial.
 
 
 16
 Similarly, in scrapping the carriers' further charge that their competitive positions vis-a-vis insurance companies outside the federal program would be jeopardized by exposure of innovative benefits, the District Court again tackled factual issues and selected from competing inferences. Carrier affidavits represented that disclosure of insurance proposals would reveal to nonparticipating companies areas in which they might profitably pursue new research and development.[41] Even though innovations would be disseminated to the employee force and thus laid bare to other carriers by November if accepted,[42] they averred that the lead time afforded by divulgence of benefit-changes in May[43] would be significant.[44] Moreover, without compulsory disclosure so the argument ran if the innovation did not survive negotiations so as to become part of the final package, it would not be unveiled at all, and other carriers would not be aware that it had been developed by one of their competitors.[45]
 
 
 17
 The District Court spurned these contentions, deeming access to the proposals innocuous when unaccompanied by a view of the underlying statistical or actuarial data,[46] and reasoning that a competitor would be forced to develop the mechanics of the innovation on its own.[47] The court also observed that "(n)o showing (was) made that the innovations of one carrier are so radically different that the other carriers have not considered the possibilities themselves."[48] To be sure, a carrier might have to prove its innovation was "radically different" in order to prevail at a trial, but the burden at that stage was on NAGE as the movant for summary judgment to demonstrate that there was no factual disagreement of importance at all.[49] We reiterate[50] that "the party opposing (a) motion (for summary judgment) is entitled to all favorable inferences deducible from the parties' evidentiary representations,"[51] and here the carriers and the Commission were not so indulged.
 
 IV
 
 18
 The Commission claims that the District Court erred additionally in denying its summary-judgment motion, and urges us to direct the entry of such a judgment in its favor. Pointing out that NAGE offered nothing to counter the affidavits that it and the carriers had filed, the Commission contends that, for lack of response, no material issue of facts arose.
 
 
 19
 This argument is misguided. It is well settled that a party opposing summary judgment need come forward with a rebuttal only if its omission enables the movant to satisfy his burden of showing that no issue of material fact persists.[52] "(W)here the evidentiary matter in support of the motion does not establish the absence of a genuine issue," the Supreme Court instructs, "summary judgment must be denied Even if no opposing evidentiary matter is presented."[53] Although, of course, it is preferable and certainly advisable for the opposing party to submit affidavits or other counter-active materials, such rebuttal is not necessary "(w)here by the nature of things the moving papers themselves demonstrate that there is inherent in the problem a factual controversy . . . ."[54] Here the same factual disputes that the District Court undertook to adjudicate on NAGE's motion[55] served equally as barriers to summary judgment for the Commission. The affidavits upon which the Commission relies did not negate the existence of factual issues; indeed, they made plain their presence.
 
 
 20
 The affidavits, for the most part, stated merely the conclusions of carrier officials that competitive harm would follow disclosure of the health insurance proposals, and did not supply evidentiary details to support those conclusions.[56] Ofttimes competitive injury is difficult to establish,[57] and in determining whether such injury will ensue from premature release of the health insurance proposals the factfinder might well be summoned to "exercise its judgment in view of the nature of the material sought and the competitive circumstances . . . relying at least in part on relevant and credible opinion testimony."[58] But the opinion-evaluation thus necessitated is a task for which a summary-judgment motion is ill-suited.[59] The judicial function at that stage, we repeat, is not factfinding, but rather an ascertainment of whether factfinding is essential to disposition of the litigation,[60] and in no event is summary judgment appropriate unless the movant is entitled to victory as a matter of law.[61] As the Supreme Court has warned, expert opinions "have no such conclusive force that there is error of law in refusing to follow them";[62] to boot, expert witnesses normally should be subject to "cross-examination, the best method yet devised for testing trustworthiness of testimony."[63] It follows that "their credibility and the weight to be given to their opinions is to be determined, after trial, in the regular manner."[64] Particularly when, as is the situation here, experts are not wholly disinterested in the outcome of the litigation, courts must exercise cautious restraint in awarding summary judgments.[65] Nothing in the case before us suggests an occasion unsuited to observance of these wholesome admonitions.
 
 
 21
 We would hold, then, that the Commission's motion for summary judgment was correctly denied. Since however, NAGE's motion encountered factual controversy, summary judgment in its favor was improper. That judgment is accordingly reversed and the case is remanded to the District Court for trial.
 
 
 22
 So ordered.
 
 
 
 [1]
 Pub.L. No. 89-487, 80 Stat. 251 (1966), codified by Pub.L. No. 90-23, 81 Stat. 55 (1967), as amended, 5 U.S.C. § 552 (1976), hereinafter cited by code reference
 
 
 [2]
 Joint Appendix (J.App.) 10
 
 
 [3]
 Pub.L. No. 89-554, 80 Stat. 600 (1966), as amended, 5 U.S.C. §§ 8901 Et seq. (1976), hereinafter cited as codified
 
 
 [4]
 5 U.S.C. § 8906 (1976)
 
 
 [5]
 5 U.S.C. §§ 8902(e)-(i), 8904 (1976); 5 C.F.R. §§ 890.201 Et seq. (1977)
 
 
 [6]
 5 U.S.C. § 8902(i) (1976)
 
 
 [7]
 5 C.F.R. § 890.203(b) (1977)
 
 
 [8]
 5 C.F.R. § 890.203(b) (1976). Proposed changes in premiums or benefits must now be tendered at least five and eight months, respectively, before the carrier's current contract expires in order to take effect for the forthcoming contractual period
 
 
 [9]
 See 5 C.F.R. § 203(b) (1977)
 
 
 [10]
 See 5 C.F.R. § 890.301(d)(1) (1977)
 
 
 [11]
 5 C.F.R. § 890.203(a) (1977). Beginning in 1977, approved health plans may become effective either January 1 or July 1. 5 C.F.R. § 890.203(a) (1977). To accommodate new plans with an effective date of July 1, the Commission announces and conducts special open seasons to permit employees to transfer their enrollment to the newly approved plan. 5 C.F.R. § 890.301(d)(2) (1977)
 
 
 [12]
 J.App. 11
 
 
 [13]
 J.App. 18
 
 
 [14]
 National Ass'n of Gov't Employees v. Hampton, Civ. No. 76-1041 (D.D.C. June 11, 1976) (unreported)
 
 
 [15]
 J.App. 8, 10
 
 
 [16]
 National Ass'n of Gov't Employees v. Hampton, supra note 14, at 1, J.App. 68
 
 
 [17]
 Id
 
 
 [18]
 The intervenors were Aetna Life Insurance Company, American Postal Workers Union, Blue Cross Association, National Association of Blue Shield Plans and the National Association of Letter Carriers. All are appellants here
 
 
 [19]
 Department of Air Force v. Rose, 425 U.S. 352, 360-361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11, 20-21 (1976); EPA v. Mink, 410 U.S. 73, 79-80, 93 S.Ct. 827, 832-833, 35 L.Ed.2d 119, 127-128 (1973); Vaughn v. Rosen, 173 U.S.App.D.C. 187, 193, 523 F.2d 1136, 1142 (1975); Soucie v. David, 145 U.S.App.D.C. 144, 157, 448 F.2d 1067, 1080 (1971)
 
 
 [20]
 See Department of Air Force v. Rose, supra note 19, 425 U.S. at 361, 96 S.Ct. at 1599, 48 L.Ed.2d at 21; EPA v. Mink, supra note 19, 410 U.S. at 79, 93 S.Ct. at 832, 35 L.Ed.2d at 127-128; Vaughn v. Rosen, supra note 19, 173 U.S.App.D.C. at 193, 523 F.2d at 1142 (footnote omitted); Soucie v. David, supra note 19, 145 U.S.App.D.C. at 157, 448 F.2d at 1080
 
 
 [21]
 National Parks & Conservation Ass'n v. Kleppe, 178 U.S.App.D.C. 376, 382, 547 F.2d 673, 679 (1976); Vaughn v. Rosen, supra note 19, 173 U.S.App.D.C. at 195, 523 F.2d at 1144
 
 
 [22]
 5 U.S.C. § 552(b)(4) (1976). At the first level of administrative consideration of NAGE's request, the Commission also cited Exemption 5, 5 U.S.C. § 552(b)(5) (1976), but that objection was rebuffed, National Ass'n of Gov't Employees v. Hampton, supra note 14, at 2 n.1, J.App. 69, and has not been urged in this court
 
 
 [23]
 That is the relevant language of Exemption 4. 5 U.S.C. § 552(b)(4) (1976)
 
 
 [24]
 The District Court, though "puzzled by the absence from the cases of any discussion of what constitutes 'commercial information,' " found it unnecessary, in view of its disposition of the case, to delve into the question. National Ass'n of Gov't Employees v. Hampton, supra note 14, at 3 n.2, J.App. 70. Since our decision rests upon procedural rather than substantive grounds, we have no occasion to ponder the question either
 
 
 [25]
 See text Supra at note 23
 
 
 [26]
 See text Supra at note 23
 
 
 [27]
 162 U.S.App.D.C. 223, 498 F.2d 765 (1974), Aff'd in part and reversed in part after remand, 178 U.S.App.D.C. 376, 547 F.2d 673 (1976)
 
 
 [28]
 Id. at 228, 498 F.2d at 770 (footnote omitted)
 
 
 [29]
 J.App. 21-23, 24-26, 36-38, 39-46, 50-52, 53-56, 57-60, 63-66
 
 
 [30]
 National Ass'n of Gov't Employees v. Hampton, supra note 14, at 5-6, J.App. 72-73
 
 
 [31]
 Id. at 9, J.App. 76
 
 
 [32]
 Fed.R.Civ.P. 56(c); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, 154 (1970); Bouchard v. Washington, 168 U.S.App.D.C. 402, 405, 514 F.2d 824, 827 (1975); Nyhus v. Travel Management Corp., 151 U.S.App.D.C. 269, 271, 466 F.2d 440, 442 (1972); Semaan v. Mumford, 118 U.S.App.D.C. 282, 283, 335 F.2d 704, 705 (1964)
 
 
 [33]
 United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962); accord, Adickes v. S. H. Kress & Co., supra note 32, 398 U.S. at 157, 90 S.Ct. at 1608, 26 L.Ed.2d at 154
 
 
 [34]
 Id., quoting Semaan v. Mumford, supra note 32, 118 U.S.App.D.C. at 283 n.2, 335 F.2d at 705 n.2, in turn quoting, Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213, 216 (8th Cir. 1951)
 
 
 [35]
 Adickes v. S. H. Kress & Co., supra note 32, 398 U.S. at 157, 90 S.Ct. at 1608, 26 L.Ed.2d at 154; Bloomgarden v. Coyer, 156 U.S.App.D.C. 109, 114-115, 479 F.2d 201, 206-207 (1973); Nyhus v. Travel Management Corp., supra note 32, 151 U.S.App.D.C. at 271, 466 F.2d at 442
 
 
 [36]
 Nyhus v. Travel Management Corp., supra note 32, 151 U.S.App.D.C. at 271, 466 F.2d at 442 (footnote omitted)
 
 
 [37]
 See text Supra at note 21
 
 
 [38]
 See text Supra at notes 32-36
 
 
 [39]
 J.App. 22, 43, 44, 58
 
 
 [40]
 National Ass'n of Gov't Employees v. Hampton, supra note 14, at 7-8, J.App. 74-75
 
 
 [41]
 J.App. 56, 58, 59
 
 
 [42]
 See text Supra at note 10
 
 
 [43]
 See text Supra at note 8
 
 
 [44]
 J.App. 58-59
 
 
 [45]
 The Commission opposed no more than release of the proposals prior to the time the ensuing contracts are made public. The carriers, however, resisted disclosure of unaccepted proposals even after the contents of the contracts become known. The Commission sought comments from the carriers on the latter, but had not concluded its consideration when this appeal was submitted
 
 
 [46]
 See text Supra at notes 16-17
 
 
 [47]
 National Ass'n of Gov't Employees v. Hampton, supra note 14, at 89, J.App. 75-76
 
 
 [48]
 Id. at 9, J.App. 76
 
 
 [49]
 See text Supra at notes 32-36
 
 
 [50]
 See text Supra at note 33
 
 
 [51]
 Bouchard v. Washington, supra note 32, 168 U.S.App.D.C. at 405, 514 F.2d at 827, citing Adickes v. S. H. Kress & Co., supra note 32, 398 U.S. at 157, 90 S.Ct. at 1608, 26 L.Ed.2d at 154 (footnotes omitted). Accord, United States v. Diebold, Inc., supra note 33, 369 U.S. at 655, 82 S.Ct. at 994, 8 L.Ed.2d at 177; Nyhus v. Travel Management Corp., supra note 32, 151 U.S.App.D.C. at 171, 466 F.2d at 442
 
 
 [52]
 Adickes v. S. H. Kress & Co., supra note 32, 398 U.S. at 160, 90 S.Ct. at 1609-1610, 26 L.Ed.2d at 155-156; Bloomgarden v. Coyer, supra note 35, 156 U.S.App.D.C. at 114-115, 479 F.2d at 206-207; Bromley-Heath Modernization Comm. v. Boston Housing Auth., 459 F.2d 1067, 1071-1072 (1st Cir. 1972); Inglett & Co., Inc. v. Everglades Fertilizer Co., 255 F.2d 342, 348 (5th Cir. 1958)
 
 
 [53]
 Adickes v. S. H. Kress & Co., supra note 32, 398 U.S. at 160, 90 S.Ct. at 1610, 26 L.Ed.2d at 155 (emphasis in original), quoting the Advisory Committee Note on the 1963 amendment to Rule 56(e) (footnote omitted)
 
 
 [54]
 Inglett & Co., Inc. v. Everglades Fertilizer Co., supra note 52, 255 F.2d at 348
 
 
 [55]
 See Part III Supra
 
 
 [56]
 "Conclusory and generalized allegations are indeed unacceptable as a means of sustaining the burden of nondisclosure under the (Act), since such allegations necessarily elude the beneficial scrutiny of adversary proceedings, prevent adequate appellate review and generally frustrate the fair assertion of rights under the Act." National Parks & Conservation Ass'n v. Kleppe, supra note 21, 178 U.S.App.D.C. at 383, 547 F.2d at 680 (citations omitted)
 
 
 [57]
 Id. at 386, 547 F.2d at 683
 
 
 [58]
 Id
 
 
 [59]
 Sartor v. Arkansas Gas Corp., 321 U.S. 620, 627-628, 64 S.Ct. 724, 728-729, 88 L.Ed. 967, 972-973 (1944); Dewey v. Clark, 86 U.S.App.D.C. 137, 141, 180 F.2d 766, 770 (1950)
 
 
 [60]
 See text Supra at note 36
 
 
 [61]
 See text Supra at notes 32, 34
 
 
 [62]
 Sartor v. Arkansas Gas Corp., supra note 59, 321 U.S. at 627, 64 S.Ct. at 729, 88 L.Ed. at 973, quoting Dayton Power & Light Co. v. Public Utils. Comm'n, 292 U.S. 290, 299, 54 S.Ct. 647, 652, 78 L.Ed. 1267, 1275 (1934)
 
 
 [63]
 Sartor v. Arkansas Gas Corp., supra note 59, 321 U.S. at 628, 64 S.Ct. at 729, 88 L.Ed. at 972
 
 
 [64]
 Id. at 628-629, 64 S.Ct. at 729, 88 L.Ed. at 773
 
 
 [65]
 Dewey v. Clark, supra note 59, 86 U.S.App.D.C. at 141, 180 F.2d at 770, citing Sonnentheil v. Christian Moerlein Brewing Co., 172 U.S. 401, 408, 19 S.Ct. 233, 235, 43 L.Ed. 492, 495 (1899)